**UNITED STATES of America**
**v.**
**Rebecca B. ROBERTS, Defendant.**
**No. 62 Cr. 330.**

United States District Court
S. D. New York.
Nov. 4, 1968.

**196**

Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, Roger J. Hawke, Asst. U. S. Atty., of counsel, for the Government.

Louis Bender, New York City, Lloyd A. Hale, New York City, of counsel, for defendant.

MEMORANDUM

BONSAL, District Judge.

Defendant, a 60-year-old woman, moves, pursuant to Rule 48(b), F.R. Crim.P., and the Fifth and Sixth Amendments to the Constitution, to dismiss an indictment, filed April 9, 1962, charging the defendant in six counts with wilfully evading the payment of income taxes owed by herself and a corporation, Endeavor Press, Inc., (of which she was allegedly the president) for the years 1955, 1956, 1957 and the first two months of 1958. The indictment charges, in counts one, two, and three, that the defendant owed $16,921.15 for 1955, $5,498.08 for 1956, and $2,800.48 for 1957; and in counts four, five, and six, that the Endeavor Press, Inc. owed $7,039.21 for the fiscal year ending February 29, 1956, $9,327.85 for the fiscal year ending February 28, 1957, and $4,576.07 for the fiscal year ending February 28, 1958, making a total of $46,162.84.

On April 16, 1962, the defendant pleaded not guilty. Two years later, on April 23, 1964, the case was marked off the trial calendar. It appears that on March 24, 1964, a complaint was filed in the Criminal Court of the City of New York, charging the defendant with larceny; in October 1964, she was tried and convicted, and on January 22, 1965, sentenced to an indefinite prison term. The defendant was committed to the Women's House of Detention from January 1965 until June 1965 when she was released pending appeal. In May 1967, following the affirmance of her conviction, she was remanded to the Women's House of Detention where she remained until May 1968 when she was released.

On November 28, 1967, while the defendant was still in State custody, the case was restored to the trial calendar. On January 24, 1968, a tentative date for trial in April 1968 was set, six years after the filing of the indictment and over ten years after the offenses charged.

In February 1968, at this court's request, Mr. Hawke, the Assistant U. S.

Attorney now in charge of the case, wrote a letter to the court stating that since 1962 four other Assistants had been assigned to prosecute the case and that they had all left the Office of the United States Attorney.

In April 1968, the defendant's counsel stated that the defendant suffered from hypertension and submitted a letter from defendant's doctor to that effect. The court ordered a physical examination of the defendant and she was examined by Dr. Richard Baerg, who submitted a report to the court. His findings were that the defendant, 60 years old, was severely obese, and suffered from "mild cardiac failure and * * * moderately severe hypertension, * * * and * * that the additional stress of a courtroom trial would cause both of these conditions to deteriorate further unless specific therapy was instituted before such a trial took place."

At a conference held on May 9, 1968, the court indicated that, in light of Dr. Baerg's report, a trial should not be held until it was determined how the defendant responded to treatment, and that the defendant should be reexamined within two weeks prior to any trial date subsequently fixed.

On September 19, 1968, another hearing was held to determine whether the case could proceed to trial. At the hearing, Dr. William Lovejoy, who had examined the defendant on September 12, 1968, testified that the defendant was suffering from, among other things, moderately severe hypertensive cardiovascular disease and depression. Dr. Lovejoy at first stated that the defendant was "probably" able to undergo the strain of a trial if she were under medical supervision and the court sessions were abbreviated. However, upon being told of the nature of the case, the type of proof the Government would use, and the type of defense which the defendant would have to present, he testified that he could not state that the trial was not a risk to her health. He stated that the nature of the case and its duration were already causing the defendant to become progressively depressed.

The defendant urges that, in light of the defendant's medical history and present condition and the long delay in bringing this case to trial, the indictment should be dismissed under the court's discretionary powers under Rule 48(b), F.R.Crim.P., and under the Fifth and Sixth Amendments.

The Government counters by pointing out that the defendant has at no time moved, formally or informally, for a speedy trial and that such conduct constitutes a waiver of the defendant's right to a speedy trial under the Sixth Amendment. The Government also contends that the defendant has not shown that she was prejudiced by the delay in this case.

As to the asserted waiver by the defendant, it is true that, in United States v. Lustman, 258 F.2d 475, 478 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958), the Court stated that "the right to a speedy trial is the defendant's personal right and is deemed waived if not promptly asserted."

However, in United States v. Simmons, 338 F.2d 804, 807 (2d Cir. 1964), cert. denied, 380 U.S. 983, 85 S.Ct. 1352, 14 L.Ed.2d 276 (1965), the Court stated that "four factors are relevant to a consideration of whether denial of a speedy trial assumes due process [or Sixth Amendment] proportions: the length of delay, the reason for the delay, the prejudice to defendant, and waiver by the defendant * * *" quoting United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 623 (2d Cir. 1963), wherein the Court also stated that "these factors are to be considered together because they are interrelated." And, as Judge Frankel recently pointed out in United States v. Mann, 291 F.Supp. 268 (S.D.N.Y., Oct. 9, 1968), "if this fourth element [of waiver by the defendant] could by itself defeat the defendant in every case, it would certainly not be aptly described as being merely one of four 'factors' to be weighed together."

198

If the presumption of innocence which cloaks every defendant until a guilty verdict is returned is to have meaning, a defendant should not be required to move for a prompt trial to establish his innocence. It is the Government "which initiates the action and it is the [Government] which * * * likewise has the duty of seeing that the defendant is speedily brought to trial." People v. Prosser, 309 N.Y. 353, 358, 130 N.E.2d 891, 895, 57 A.L.R.2d 295 (1955).

In this regard, it has recently been recommended that "the time for trial should commence running, *without demand by the defendant* * * * from the date the charge is filed." (Emphasis added). ABA Project on Minimum Standards For Criminal Justice, Advisory Committee on the Criminal Trial, "Standards Relating to Speedy Trial" § 2.2, at 16 (Tentative Draft, May 1967). In the Commentary, the Advisory Committee notes that "the demand requirement [by the defendant] is inconsistent with the public interest in prompt disposition of criminal cases." ABA Project, id. at 17.

Finally, under Rule 48(b), F.R.Crim. P., the Court's power to dismiss may be based on broader considerations than just the Sixth Amendment's right to a speedy trial.

"Rule 48(b) 'is a restatement of the inherent power of the court to dismiss a case for want of prosecution.' And that power is not circumscribed by the Sixth Amendment." Mann v. United States, 113 U.S.App.D.C. 27, 304 F.2d 394, 398, cert. denied, 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962).

See also United States v. Mann, supra; United States v. Research Foundation, Inc., 155 F.Supp. 650 (S.D.N.Y.1957); 8 Moore, Federal Practice, ¶ 48.03[1] at pp. 48–10, 48–11 (1968).

■ As to the prejudice to defendant because of the delay in bringing the case to trial, "prejudice may fairly be presumed simply because everyone knows that memories fade, evidence is lost, and *the burden of anxiety upon any criminal*

*defendant increases with the passing months and years."* United States v. Mann, supra, (Emphasis added). "[T]he Sixth Amendment's guarantee of a speedy trial * * * is an important safeguard to * * * minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966).

However, in this case, there is more evidence of prejudice than just the presumption because of delay. The Government was proceeding on the bank deposits theory. Under this theory, the Government presents evidence, in the form of bank deposit slips and statements, and books and records, all dating back to 1955–1958, to show that the defendant made the deposits and that it has adequately investigated the source of the deposits. United States v. Doyle, 234 F.2d 788 (7th Cir. 1956). "[S]uch evidence will support an inference that the deposits are taxable." United States v. Doyle, supra at 793.

After the Government's presentation, the defendant has the burden of rebutting the inference by explaining to the jury's satisfaction either that they were not her deposits, or if they were, that they were not taxable income to her or the corporation of which she was the president. This imposes a heavy burden on the defendant where transactions over ten years old are involved. Dr. Lovejoy testified that the necessity of presenting this type of defense, difficult enough for the ordinary person, would aggravate this defendant's physical and mental condition.

■ There has been no showing by the Government that the case could not have been tried many years ago. It really comes down to the fact that successive Assistants did not push the case to trial. This continued until Mr. Hawke placed the case on the calendar in November 1967, which was more than five years after indictment and ten years after the acts for which defendant was indicted.

The fact that defendant was in State custody part of this period furnished no reason not to move the case for trial. State prisoners are routinely brought to trial in this court.

In view of the long and unreasonable delay in bringing this case to trial, the defendant's medical history and present physical and mental condition, and the additional stress that would be placed on her to defend against charges of this nature, the court has concluded in its discretion to dismiss the indictment.

Defendant's motion, pursuant to Rule 48(b), F.R.Crim.P., to dismiss the indictment is granted.

It is so ordered.